IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| RICARDO A. MARTINEZ, § <br> Institutional ID Nos. 2053571, § <br> 05791264, 00858473 § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> BRITTANY WALLACE, *et al.*, § <br> § <br> Defendants. § § § | Civil Action No. 1:22-CV-00136-BU |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Ricardo A. Martinez, a former inmate with the Texas Department of Criminal Justice (TDCJ), brings this action against Brittany Wallace, Dakota Thornton, Crystal Reyes, H. M. Pederson, T. Phillips, FNU Gates, K. Burnett, FNU Robinson, FNU Cano, and FNU Lopez (collectively, "the Defendants")[1] alleging that they violated his constitutional rights. Martinez's claims are subject to judicial screening under 28 U.S.C. §§ 1915 and 1915A because Martinez has been granted leave to proceed *in forma pauperis*, Dkt. No. 5, and he sues government officials, *see* Dkt. No. 16. Martinez has not consented to the undersigned exercising the jurisdiction of this Court; therefore, the undersigned submits

---

[1] Through the authenticated records, the undersigned has presumptively identified H.M. Pederson as Heather M. Pederson, T. Phillips as Tyra Phillips, K. Burnett as Katlin Burnett, FNU Robinson as George E. Robinson Jr., FNU Cano as Leeroy Cano, and FNU Lopez as John R. Lopez. **The Clerk is directed to conform the docket accordingly**.

these Findings, Conclusions, and Recommendations (FCR) regarding whether Martinez's claims survive judicial screening.

For the reasons below, the undersigned RECOMMENDS that the Court DISMISS Martinez's claims as frivolous and for failing to state a claim upon which relief may be granted.

## I.  JURISDICTION

Martinez brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 16. Venue is proper in the Northern District of Texas, Abilene Division, because Martinez's claims arise out of his incarceration at the Robertson Unit located in Jones County, Texas. 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter this FCR after United States District Court Judge James Wesley Hendrix transferred Martinez's case to the undersigned for preliminary screening. Dkt. No. 6; 28 U.S.C. § 636(c)(1).

## II.  FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favors the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in his or her complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

Since 2000, Martinez has adhered to Native American faith and customs. Dkt. No. 16-1 at 2. While Martinez was an inmate at the Connelly Unit, he received "sage, sweet grass, and cedar herbs" from a volunteer who provided spiritual services to inmates. *Id.* at 3. Martinez says that a unit chaplaincy had approved the herbs, which he kept in a folded-up piece of paper. *Id.* at 2. In 2017, Martinez was transferred from the Connelly Unit to the Robertson Unit. *Id.* at 3. In January 2020, Martinez purchased a medicine bag to store his herbs. *Id.* at 3. Around that time, Martinez also purchased a medicine wheel medallion. *Id.*

On or around August 31, 2020, Wallace searched Martinez's cell block. *Id.* When she approached Martinez's cell, he told her of the herbs in his medicine bag and claimed they were religious items protected "under Policy 5.01 and 3.72 Administrative Directive."[2] *Id.* He then offered to remove the contents of his medicine bag for Wallace to inspect. *Id.* Wallace purportedly responded, "I don't fucking give a shit about any of that," and told him to "go into the deep space." *Id.* Wallace proceeded to search Martinez's cell and "intentionally and knowingly desecrated" his medicine bag and then seized the bag, its contents, and the medicine wheel medallion. *Id.*

Wallace found a "green leafy substance" inside the medicine bag and wrote Martinez a disciplinary case alleging that the "green leafy substance" was synthetic marijuana. *Id.* As a result of this charge, Martinez was sent to the Administrative Segregation Building (Ad-Seg), and on his way there, he passed Warden Cano. *Id.* Martinez attempted to explain the situation, but Cano refused to intervene. *Id.* Prison officials returned Martinez's

---

[2] Martinez insists that prison officials are not permitted to touch items covered by these directives. *See* Dkt. No. 16-1 at 3.

3

medicine medallion shortly after he arrived in Ad-Seg. *Id.*

Counsel Substitute Burnett was assigned to represent Martinez during his disciplinary hearing on September 1, 2020.[3] *Id.* at 4. At the hearing, Burnett offered Disciplinary Hearing Officer (DHO) Thornton a copy of the Administrative Directives Martinez had cited to Wallace. *Id.* Martinez also gave Thornton a picture of the herbs and explained their meaning. *Id.* Martinez further alleges that he wanted to call a unit chaplain to testify on his behalf but claims that Burnett did not attempt to call the chaplain as a witness and Thornton refused Martinez's own attempts to do so. Dkt. Nos. 16 at 4; 16-1 at 3–4.

Towards the end of the hearing, Thornton supposedly told Martinez that if he admitted to the charge, he would "give [him] a lighter sentence because he wasn't going against his officer's words." Dkt. No. 16-1 at 4. Martinez refused, and Thornton found him guilty. *Id.* Martinez's punishment included the loss of recreational, phone, commissary, and visitation privileges, demotion in line status, more restrictive living conditions, and loss of 30 days of good time credits. *Id.*

Martinez filed several grievances relating to the seizure of his property and his disciplinary charge. *See* Dkt. Nos. 16-2–16-7. Martin claims that grievance investigator Crystal Reyes failed to investigate his grievances properly. Dkt. No. 16-1 at 4. He also claims that grievance investigators in Huntsville, Texas—Phillips and Pederson—"falsely alleged they conducted investigations" into his Step 2 grievances. *Id.* Relatedly, Martinez

---

[3] There is conflicting evidence regarding the date of the disciplinary hearing. Martinez alleges that it was held on September 1, 2020, however, he also writes in one of his grievances that the hearing was held on September 3, 2020. Dkt. No. 16-4 at 2. Other records show that the hearing date was September 3, 2020. Dkt. No. 16-7 at 2.

4

complains that Wardens Cano and Lopez signed responses to his grievances without taking the action he wanted. *Id.* at 5; Dkt. No. 16 at 7.

Martinez also filed a case with TDCJ's Office of the Inspector General (OIG). In March 2021, Martinez learned that OIG investigators—Gates and Robinson—had closed his case because they could not substantiate his complaints. Dkt. No. 16-1 at 5. On or about July 10, 2022, an unnamed unit property officer notified Martinez that the medicine bag and its contents had been destroyed. *Id.*; Dkt. No. 16 at 7.

### III.  THE PARTIES

Martinez filed his Complaint on September 20, 2022, and his Amended Complaint on November 7, 2022, seeking monetary and injunctive relief. Dkt. Nos. 1, 16. Construing his allegations liberally, the undersigned finds that Martinez brings claims under the First, Fourth, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq. *See* Dkt. No. 16.

Martinez alleges that Wallace wrongfully seized and deprived him of his medicine bag, herbs, and medicine wheel medallion in violation of the Fourth and Fourteenth Amendments. As part of these claims, he insists that her seizure of his property violated TDCJ Administrative Directives.

Regarding Warden Cano, Martinez maintains that he is liable for failing to step in once Martinez explained the situation. The undersigned construes this as a failure-to-intervene claim under the Eighth Amendment.

Next, Martinez alleges that Thornton's handling of the disciplinary hearing—specifically, the fact that he denied Martinez the chance to call a witness—violated Martinez's

right to due process of law. Martinez further claims that Thornton's punishment violated the Eighth Amendment's prohibition against cruel and unusual punishment.

As for Burnett, Martinez complains that she provided ineffective assistance by failing to obtain an analysis of the "green leafy substance" or inform him of the consequences of his disciplinary charge. Martinez also faults Burnett for not explaining the trial defense strategy or attempting to call witnesses on his behalf. The undersigned construes these allegations as claims of ineffective assistance of counsel and denial of procedural due process.

Turning to Reyes, Pederson, Phillips, Gates, Robinson, Cano, and Lopez, Martinez claims that these individuals failed to properly investigate his grievances or falsely claimed that they had investigated his complaints, which the undersigned construes as a procedural due process claim.

Martinez also brings five claims against the Defendants as a collective. These claims can be broken into two groups, the first of which contains Martinez's claims that the Defendants' actions have violated his religious rights. Specifically, Martinez alleges that the Defendants have violated his rights under the Free Exercise Clause of the First Amendment, RLUIPA, and the Fourteenth Amendment's Equal Protection Clause.

As for the second group, Martinez brings a retaliation claim maintaining that the Defendants have retaliated against him because of his Native American faith. Finally, he alleges that the Defendants worked in concert as part of a conspiracy to punish him for his beliefs.

6

## IV. LEGAL STANDARDS

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at*

7

*Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett*

*v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V.  ANALYSIS

To state a claim under 42 U.S.C. § 1983, Martinez must "allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Martinez has many theories of how the Defendants violated his constitutional rights, but before delving into each one, the undersigned notes that his ability to plead a plausible claim for relief is severely hamstrung by *Heck v. Humphrey*, 512 U.S. 477 (1993).

"In *Heck*, the Supreme Court held that if a plaintiff's civil rights claim for damages challenges the validity of his criminal conviction, and the plaintiff cannot show such conviction or sentence has been reversed, invalidated, or otherwise set aside, the claim is not cognizable under § 1983." *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019) (per curiam) (citing *Heck*, 512 U.S. at 486–87). "A § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) (citation omitted). This rule applies to prison disciplinary convictions. *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998).

Here, Martinez was found guilty of possessing synthetic marijuana, and he admits that his conviction has not been reversed, expunged, invalidated, or otherwise overturned. Dkt. No. 11 at 5. Crucially, this means that the Court cannot accept as true Martinez's allegations that the "leafy green substance" in his medicine bag was religious herbs and not synthetic marijuana because to do so would call into question the validity of his disciplinary conviction. *See Falkins v. Goings*, No. 2:21-CV-1749, 2022 WL 17844619, at *3–5 (E.D. La. Dec. 22, 2022) (finding that *Heck* required the court to accept as true that the plaintiff had contraband at the time of the officers' use of force because he had been found guilty of possessing contraband at prison disciplinary proceeding), *appeal filed*, No. 23-3012. As discussed below, *Heck* also bars many of Martinez's claims.

### A.   Martinez's claims against Wallace related to the seizure of his property are *Heck* barred or otherwise legally frivolous.

Martinez alleges that Wallace wrongfully seized and deprived him of his property in violation of the Fourth and Fourteenth Amendments, and he insists that her seizure violated TDCJ Administrative Directives. These allegations fail to state a claim and are legally frivolous.

The Fourth Amendment—as incorporated against the States by the Fourteenth Amendment—guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Martinez's Fourth Amendment claim fails for multiple reasons. First, he cannot maintain a claim for an unreasonable search because the Fourth Amendment's protection against unreasonable searches does not apply to prison cells. *Hudson v. Palmer*, 468 U.S. 517, 530

(1984). As for any unreasonable seizures, prisoners do not have a property interest in contraband. *See Schwarzer v. White*, No. 6:18-CV-00029, 2023 WL 4151699, at *7 (S.D. Tex. Mar. 29, 2023) (collecting cases). Therefore, Martinez cannot complain about Wallace's seizure of property he was not permitted to possess in the first place.

Martinez's second claim alleges that Wallace deprived him of his property in violation of the Fourteenth Amendment. Even if Martinez suffered a wrongful deprivation of his property, his remedy would be through a state-law conversion claim, not a claim under § 1983. *See Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) ("In Texas, when an inmate's property is taken without compensation, his remedy is in state court, not federal court.") (citing *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983)).

Last, as to Martinez's allegation that Wallace violated TDCJ policies, the law is clear that an officer does not violate the constitution merely because their actions violated prison regulations. *Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009) (per curiam) ("violations of prison rules or regulations, without more, do not give rise to a cause of action"). So, even if Wallace violated a TDCJ policy or directive, any violation would not give rise to a claim under § 1983.

### B.   Martinez has not provided facts to support a failure-to-intervene claim against Cano.

To state a failure-to-intervene claim, Martinez must plausibly allege that Cano (1) was present while another officer violated his constitutional right, (2) was aware of the violation, and (3) had a clear opportunity to intervene but failed to do so. *Tuttle v. Sepolio*, 68 F.4th 969, 975 (5th Cir. 2023).

Martinez faults Cano for failing to intervene after Wallace had seized Martinez's property and written him a disciplinary charge. But because Wallace did not violate Martinez's constitutional rights, as explained above, Cano had no duty to intervene during his encounter with Martinez. These allegations fail to state a claim.

### C.     *Heck* bars Martinez's claims against Thornton.

Martinez claims that Thornton's handling of his disciplinary proceeding deprived him of due process and that Thornton's disciplinary sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment.[4] *Heck* forecloses both because Martinez's first claim challenges Thornton's handling of the disciplinary hearing and the latter Thornton's sentencing decision. 512 U.S. at 486 (barring claims that "would render a *conviction or sentence* invalid") (emphasis added); *see also Edwards v. Balisok*, 520 U.S. 641, 645–49 (1997). These claims are legally frivolous.

### D.     **The Constitution does not guarantee the effective assistance of a counsel substitute, and *Heck* bars any due process claim against Burnett.**

Martinez brings two claims against Burnett. First, he complains that Burnett provided ineffective assistance as his counsel substitute. This claim is legally frivolous because there is no constitutional right to the effective assistance of counsel substitute during a prison disciplinary proceeding. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976); *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel . . . ."). And

---

[4] Martinez does not specify whether he seeks restoration of his good-time credits as a remedy, however, if he did, he could not do so through § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

12

*Heck* precludes Martinez's second claim that Burnett's representation denied him due process. *See Mouton v. Louisiana*, 572 F. App'x 502, 502–03 (5th Cir. 2013) (per curiam) (holding *Heck* barred § 1983 claim alleging ineffective assistance of counsel).

### E. Martinez cannot bring due process claims based on his dissatisfaction with the outcome of his grievances.

Martinez complains that Reyes, Pederson, Phillips, Gates, Cano, and Lopez failed to investigate his grievances properly. This claim is also legally frivolous because prisoners do "not have a federally protected liberty interest in having [their] grievances resolved to [their] satisfaction," and an alleged § 1983 due process violation for failure to investigate grievances is "indisputably meritless." *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (per curiam) (citing *Geiger*, 404 F.3d at 373–74).

### F. Martinez's claims that the Defendants violated his religious rights are meritless.

The first set of claims against the Defendants as a collective center on Martinez's allegations that they violated his religious rights. Martinez brings his claims under the First Amendment's Free Exercise Clause, RLUIPA, and the Fourteenth Amendment's Equal Protection Clause.

#### 1. *Free Exercise Clause*

The First Amendment's Free Exercise Clause requires that prisoners have reasonable opportunities "to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam). Whether a prison or detention center has violated that guarantee depends upon

whether an action or regulation is "reasonably related to legitimate penological interests. *Mayfield v. Texas Dep't of Crim. J.*, 529 F.3d 599, 607 (5th Cir. 2008).

The undersigned must first determine whether there has been a burden on Martinez's ability to practice his faith. In this regard, *Heck* makes this a peculiar case. On the one hand, the undersigned must accept Martinez's insistence that religious herbs like "sage, sweet grass, and cedar herbs" are important to his faith. Dkt. No. 16-1 at 3. On the other, the undersigned must also conclude—based on *Heck*—that the medicine bag contained synthetic marijuana. Because Martinez does not allege that synthetic marijuana is central to his faith, it would seem that his beliefs have not been burdened.

Regardless, Martinez cannot show that the regulation prohibiting inmates from possessing synthetic marijuana was not reasonably related to a legitimate penological interest. Factors that are considered in determining the reasonableness of a prison regulation include whether: (1) there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates; and (4) on the allocation of prison resources generally, and the availability of other alternatives to the prison regulation in question that would accommodate the prisoners' rights at de minimis cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987).

Here, the undersigned has little trouble concluding that any prison regulation prohibiting the possession of synthetic marijuana was reasonable. Of course, it is a legitimate aim for a prison to prevent inmates from possessing intoxicating substances. Further,

Martinez does not allege that he has been deprived of all other means of practicing his faith or been denied the opportunity to purchase herbs important to his faith. These allegations fail to state a claim under the Free Exercise Clause.

### 2. RLUIPA

Congress enacted RLUIPA to provide greater protections than the rights provided under the First Amendment. *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). RLUIPA mandates that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

To benefit from the protections of RLUIPA, a plaintiff must first show that: (1) their religious exercise is grounded in a sincerely held religious belief and (2) that the government's action substantially burdens that exercise. *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016) (citing *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015)).

Like his free exercise claim, Martinez's RLUIPA claim fails because of the lack of a burden on his religious beliefs; however, his RLUIPA claim also fails for several additional reasons. First, RLUIPA does not provide for a private right of action against a defendant in their personal capacity. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009). Thus, the Court should dismiss Martinez's RLUIPA claim against the Defendants in their personal capacities for failure to state a claim and for legal frivolousness.

Second, any request for monetary damages against the Defendants in their official capacities is barred by sovereign immunity. *Id.* Finally, Martinez is no longer in TDCJ custody, rendering any request for declaratory or injunctive relief moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001).

### 3.   *Equal Protection Clause*

To bring an equal protection claim, Martinez "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) (citing *McCleskey v. Kemp*, 481 U.S. 279 (1987)). Martinez has not made any allegations that he has been treated differently from similarly situated inmates. His conclusory invocation of the equal protection clause is insufficient, fails to state a claim, and is factually frivolous.

### G.   **Martinez's retaliation and conspiracy claims are frivolous.**

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). In evaluating such claims, the Fifth Circuit has cautioned that "prisoners' claims of retaliation are regarded with skepticism" and should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (per curiam) (citing *Woods*, 60 F.3d at 1166). Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a retaliation claim. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (citing *Johnson v. Rodriguez*,

16

110 F.3d 299, 310 (5th Cir. 1997)). Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (per curiam) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted)).

Martinez provides nothing but conclusory allegations. Beyond his subjective beliefs, he fails to plausibly allege that the Defendants harbored retaliatory animus because of his religious beliefs. Given that the undersigned must accept as true that Martinez possessed contraband, the undersigned finds it implausible that his faith motivated the Defendants' actions.

Finally, to establish a conspiracy claim under Section 1983, Martinez must show (1) "an actual violation of [Section] 1983" and (2) "an agreement by the defendants to commit an illegal act." *Leggett v. Williams*, 277 F. App'x 498, 501 (5th Cir. 2008) (per curiam). Martinez cannot show either. "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy." *Id.* (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)).

As the analysis above demonstrates, Martinez has not suffered a violation of his constitutional rights. And he has not provided anything beyond conclusory allegations to show that the Defendants had an agreement to commit an illegal act. Thus, his conspiracy claim—like his other claims—is legally and factually frivolous.

## VI.  LEAVE TO AMEND

Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile; in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Here, the Court permitted Martinez to amend his Complaint once and supplement his claims through his responses to the Court's questionnaire. Dkt. Nos. 11, 16. Despite these opportunities, Martinez has failed to put forward any allegations that plausibly suggest a violation of his constitutional rights. Thus, the undersigned concludes that allowing Martinez to amend once more would be futile.

## VII.  CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that the Court DISMISS Martinez's claims as frivolous and for failing to state a claim upon which relief may be granted. Additionally, the Court should DENY Martinez leave to amend because any further amendments would be futile.

## VIII. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within four-

teen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX. TRANSFER OF CASE

Having completed the preliminary screening of Martinez's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:22-CV-00136-H.

ORDERED this 3rd day of July 2024.

 

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE